**Harmond E. GENSTIL, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 6141.**

United States Court of Appeals
First Circuit.

Jan. 13, 1964.

Joseph E. Levine, Boston, Mass., for appellant.

William C. Madden, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts, entered April 15, 1963, following a jury verdict, convicting the defendant-appellant Harmond E. Genstil on all three counts of an indictment which charged him with making and filing false statements in violation of 26 U.S.C. §§ 7206(1) and 7206(5) (B).[1] He was sentenced for a period of two years and fined $3,000.

The first count charged that the defendant on or about March 19, 1957, falsely stated that he did not do business with banks or other financial institutions and that he did not have receipts or disbursements during the preceding twelve months.

Count two charged that on or about April 1, 1960, the defendant falsely stated that he did not own directly or indirectly any assets; that he had liabilities of only judgments totaling $2,250, and that the only assets he had disposed of for less than full value from January 1, 1942 to April 1, 1960 was real estate at 36 Greylock Road, Newtonville, Massachusetts.

The third count charged that on or about May 10, 1960, the defendant falsely stated that he had no assets.

The first question is whether there was substantial evidence to support the verdict. On December 31, 1954 the defendant accepted as correct and agreed to pay an overassessment for taxes owed by him for the years 1942 through 1945. On August 1, 1956, his account at the Internal Revenue Service showed a liability for these taxes plus penalty and interest in the total amount of $72,642.79. His account also bore the entry "No Record of accounts for 1946 through 1959."

Investigation was commenced by the Internal Revenue Service into the circumstances of the nonpayment of the assessment and the nonfilings of tax returns, and in March 1957 defendant received a summons to appear at the Boston office of the Service. He appeared on March 19, 1957 and was given a four page form to complete entitled "Statement Of Financial Condition And Other Information" by revenue officer John J. Ford. Genstil filled out the form in the office, answering "None" to the following questions:

"11. Bank or other financial institution with which you do business.

"23b. Give an analysis of receipts for past 12 months. * ° * * "

On May 3, 1960 defendant voluntarily returned to the Boston office of the Internal Revenue Service and told the chief of the office collection force, Myles P. McCabe, that he was on the verge of bankruptcy and wished to file an offer in compromise under 26 U.S.C. § 7122. The defendant was given an Offer In Compromise Form (No. 656) and a Statement of Financial Condition And Other Information Form (No. 433), both of which he took home to complete. Through the completed documents defendant offered to the Commissioner of Internal Revenue $3,580.00 to compro-

---

1. "§ 7206. *Fraud and false statements*
"Any person who—
"(1) *Declaration under penalties of perjury.*—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or
* * * * *
"(5) *Compromises and closing agreements.*—In connection with any compromise under section 7122, or offer of such compromise, or in connection with any closing agreement under section 7121, or offer to enter into any such agreement, willfully—
* * * * *
"(B) *Withholding, falsifying, and destroying records.*—Receives, withholds, destroys, mutilates, or falsifies any book, document, or record, or makes any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax;
shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

mise his $72,642.79 unpaid liabilities for the 1942–45 taxable period. In the compromise form the defendant stated "I have no assets and there is no possibility of becoming established in any way whatsoever until all Internal Revenue investigations have ceased." Answering the financial statement, defendant wrote "None" to all questions having to do with assets; he admitted to liabilities of only one $2,250 judgment; he stated that the only transfer made by him "except for full value" from January 1, 1942 to April 1, 1960 was real estate at 36 Greylock Road, Newtonville, Massachusetts, which he had transferred to his first wife for $1.00 consideration. Defendant dated the offer in compromise May 10, 1960 and the financial statement April 1, 1960. Both forms were received by mail in the Boston office of the Service on May 20, 1960.

At the trial evidence submitted to the jury disclosed that between 1947 and January 12, 1953 defendant made a cash gift of $75,000 to $80,000 to Audry L. Taylor, his secretary and farm manager, and later, apparently, his second wife. On July 17, 1955 defendant paid $5,000 in full payment for a farm located at New Durham, New Hampshire, and owned by Harley and Bertha Giles. Title, however, was taken in the name of the defendant's and his second wife's two infant children, Candace Rebecca Genstil and Pamela Robin Genstil. This farm was later accounted for as an asset in the inventory of the estate of the children filed February 4, 1958 with the Probate Court, Stratford County, New Hampshire.

Further evidence disclosed that between September 23, 1957 and March 10, 1958 defendant purchased property in Allentown, New Hampshire, from Harry and Mabelle Oakley paying $1,500 down with the remainder of the $15,000 purchase price due at the closing. The defendant, here, caused title to be taken in the name of Edmond J. and Helen C. Stapleton, who then mortgaged the property to the Manchester Federal Savings & Loan Association to secure a $14,000 note used to complete the purchase, and subsequently on June 14, 1958, transferred the property to the two infant Genstil children subject to the mortgage. This property was added to the inventory of the children's estate by amendment allowed May 26, 1959. On August 27, 1959, in an application for a loan from the Manchester Federal Savings & Loan Association, defendant certified that he held the title to this property.

Further transactions entered into by the defendant during the period covered by the questionnaires and brought to the attention of the jury included the endorsing of a note in the sum of $3,500 to Industrial Finance Co. on May 28, 1959, which note was paid April 6, 1960; the purchasing of an automobile from Commercial Credit Corporation in Manchester on July 23, 1958 for $1,900 and its subsequent trade-in to Autorama, Inc., for $1,345 on April 27, 1960 in part payment for a 1959 Cadillac purchased the same day.

On the issue of the sufficiency of the evidence the appellate court must view the evidence in the light most favorable to the government's case. United States v. Manton, 107 F.2d 834, 839 (2d Cir. 1938), cert. denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940). On the basis of the evidence presented to it, the jury could find that the defendant willfully and knowingly answered questions and made statements relating to his financial condition that were false, and that the defendant knew such answers and statements were false when he made them. See Knowles v. United States, 224 F.2d 168, 171 (10th Cir. 1955). It was not necessary for the government to have actually relied on the false statements; it is sufficient that they were made with the intention of inducing such reliance. United States v. Rayor, 204 F.Supp. 486 (S.D.Cal.1962); see also Brandow v. United States, 268 F.2d 559 (10th Cir. 1959).

In addition to the evidence submitted to the jury, the court admitted, but subsequently struck from the record and withdrew from the jury's consideration,

evidence of additional transfers and mortgages of property owned by the defendant and evidence pertaining to the receipt by the defendant of proceeds of fire insurance for the loss of a dwelling and barn situated on property owned by the defendant in Pittsfield, New Hampshire. Fifteen of the twenty-nine stricken exhibits and the testimony of fourteen witnesses which was also stricken related to the proceeds received by the defendant from the multiple insurers of the fire loss. The defendant's refusal to stipulate the total amount of the loss—saving his rights as to admissibility—necessitated the government's presentation of the fifteen proof of loss statements and drafts as well as the testimony of the fourteen witnesses.

■ The defendant contends that the trial court did not adequately instruct the jury to avoid consideration of the withdrawn exhibits and testimony. The record discloses otherwise. The court carefully described to the jurors the exhibits and testimony which they were to exclude from their consideration and which, in spite of the large amount of excluded evidence, related to only four transactions of the defendant. The defendant's request that the stricken exhibits and testimony be resubmitted to the jury to further impress upon the jurors what had been withdrawn was refused by the court, stating in the jury's presence:

> "* * * I think where they have been withdrawn they should not be brought to the jury's mind again. When they retire to consider the case they will consider only those exhibits which go with them to the jury room. That is the only thing they ought to consider. It will be the only thing in front of them."

Finally, in the court's charge, the jury was admonished to base their verdict "on the evidence in the case and on nothing else."

We think these instructions by the trial court were adequate to protect the defendant. The testimony was not such as to leave an indelible prejudice in the minds of the jurors. Shea v. D. & N. Motor Transp. Co., 316 Mass. 553, 55 N.E.2d 950 (1944). The judicial warning was sufficiently strong to correct any initial prejudice the defendant may have suffered upon the admission of the evidence. Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663 (1900); Looker v. United States, 240 F.2d 932 (2d Cir. 1917).

We have considered and found without merit other points raised by the defendant.

Judgment will be entered affirming the judgment of the district court.