**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**RSR CORPORATION,**
**Defendant-Appellant.**

**No. 80–1782.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

Jan. 4, 1982.

James W. Hightower, Dallas, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., David C. Schick, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This case presents the issue of whether Congress inadvertently changed the application of certain criminal penalty provisions for violation of federal motor safety regulations when it recently recodified the Interstate Commerce Act. We conclude that Congress has done so.

The primary business of defendant RSR Corporation is the recycling of salvaged batteries and the selling of lead taken from these batteries. RSR operates a large fleet of trucks in the course of its business. These trucks are not for hire, and they are used to transport RSR's property across state lines. On April 21, 1980 the government filed an information containing eight counts against RSR charging a criminal violation of the Federal Motor Carriers Safety Regulations. Specifically, the government charged that RSR had maintained false daily driver logs in violation of 49 C.F.R. § 395.-8.[1] It claimed that a violation of these regulations subjected RSR to criminal pen-

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

1. 49 C.F.R. § 395.8 (1980) provides, in pertinent part:

§ 395.8   *Driver's daily log.*

(a) Except as provided in § 395.9 and paragraph (t) of this section, every motor carrier shall require that a driver's daily log, form

MCS–59, shall be made in duplicate by every driver used by the carrier and every driver who operates a motor vehicle shall make such a log. Failure to make logs, failure to make required entries therein, falsification of entries, or failure to preserve logs shall make both the driver and the carrier liable to prosecution. . . .

alties under 49 U.S.C. § 11909(b), which imposes fines for willful falsification of such records. RSR moved to dismiss the counts of the information on the grounds that it was a private motor carrier and that § 11909(b) did not apply criminal penalties to private carriers. The trial court denied RSR's motion on June 16, 1980. On June 23, 1980, RSR entered a plea of guilty to counts 1, 3, 5, 7, and 8 of the information. The other counts were dismissed. RSR now appeals from the denial of its motion to dismiss the entire information. We reverse.

Our view, simply stated, is that due to the 1978 recodification of the Interstate Commerce Act, criminal penalties for violations of 49 C.F.R. § 395.8 no longer apply to private motor carriers.[2] The language of the present penalty provision, 49 U.S.C. § 11909(b), compels this result, even though the corresponding pre-recodification provision, 49 U.S.C. § 322(g), would have permitted penal sanctions against private carriers. To understand why this is so, a discussion of the history of the relevant statutory provisions of the Interstate Commerce Act is necessary.

*Statutory History*

Congress enacted Part II of the Interstate Commerce Act on August 9, 1935. Pub.L. No. 74–225, 49 Stat. 543 (originally codified at 49 U.S.C. §§ 301–327; presently codified in scattered sections of 49 U.S.C.). The new additions to the Interstate Commerce Act empowered the Interstate Commerce Commission to regulate various aspects of transportation of property by motor carriers engaged in interstate commerce, depending upon whether the carrier was classified as a common, contract, or private carrier. Section 204(a)(3) of the new Act, as codified in 49 U.S.C. § 304(a)(3), gave the ICC powers to promulgate regulations governing the safety of operations of private motor carriers:

(a) It shall be the duty of the Commission—

. . . .

(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term "motor carrier" shall be construed to include private carriers of property by motor vehicle in the administration of subsection (c) of this section and sections 305, 320, 321, 322(a), (b), (d), (f), and (g), and 324 of this title.

At issue in this case are a set of regulations issued under authority of 49 U.S.C. § 304(a)(3) describing requirements for keeping and maintaining accurate daily driver logbooks. 49 C.F.R. § 395.8.

The penalty provisions for failure to comply with these regulations were originally contained in 49 U.S.C. § 322(g) (current version at 49 U.S.C. § 11909(b)):

Any *motor carrier*, broker, or other person, or any officer, agent, employee, or representative thereof, who shall willfully fail or refuse to make a report to the Commission *as required by this chapter*, or to make specific and full, true, and correct answer to any question within thirty days from the time it is lawfully required by the Commission so to do, or to keep accounts, records, and memoranda in the form and manner prescribed by the Commission, or shall knowingly and willfully falsify, destroy, mutilate, or alter any such report, account, record, or memorandum, or shall knowingly and willfully file with the Commission any false report, account, record or memorandum, or shall knowingly and willfully neglect or fail to make full, true, and correct entries in such accounts, records, or memoranda of all facts and transactions appertaining to the business of the carrier, or person required under this chapter to keep the same, or shall knowingly and willfully keep any accounts, records, or

---

**2.** The government has not contested for purposes of this appeal that RSR is a private motor carrier within the meaning of the Interstate Commerce Act. *See* 49 U.S.C. § 10102(14).

memoranda contrary to the rules, regulations, or orders of the Commission with respect thereto, shall be deemed guilty of a misdemeanor and upon conviction thereof be subject for each offense to a fine of not more than $5,000. As used in this subsection the words "keep" and "kept" shall be construed to mean made, prepared, or compiled, as well as retained. (emphasis added)

These penalty provisions applied to private motor carriers because of § 304(a)(3), which specifically mentions § 322(g) as a provision where the definition of "motor carrier" includes private carriers.

On October 15, 1966, Congress created the Department of Transportation by means of Pub.L. No. 89–670, 80 Stat. 931 (codified at 49 U.S.C. §§ 1651 et seq.) (hereinafter referred to as the "Department of Transportation Act"). Congress transferred the ICC's authority to regulate private motor carriers under § 304(a)(3) to the DOT. 49 U.S.C. § 1655(e)(6)(C) provided that:

(e) There are hereby transferred to and vested in the Secretary [of Transportation] all functions, powers, and duties of the Interstate Commerce Commission, and of the Chairman, members, officers, and offices thereof, under—

.     .     .     .     .

(6) the following provisions of the Interstate Commerce Act as amended—

(C) relating generally to qualifications and maximum hours of service of employees and safety of operation and equipment: Sections 204(a)(1) and (2), to the extent that they relate to qualifications and maximum hours of service employees and safety of operation and equipment; and sections 204(a)(3), (3a), and (5) (49 U.S.C. 304).

49 U.S.C. § 1655(f) gave the DOT several functions and administrative powers formerly held by the ICC, including those under § 322(g):

. . . .

(2)(A) With respect to any function which is transferred to the Secretary by subsection (e) and which was vested in the Interstate Commerce Commission preceding such transfer, the Secretary shall have the same administrative powers under the Interstate Commerce Act as the Commission had before such transfer with respect to such transferred function. After such transfer, the Commission may exercise its administrative powers under the Interstate Commerce Act only with respect to those of its functions not transferred by subsection (e).

(B) For purposes of this paragraph—

(i) the term "function" includes power and duty, and

(ii) the term "administrative powers under the Interstate Commerce Act" means any functions under the following provisions of the Interstate Commerce Act, as amended: . . . section[ ] . . . 222 [codified as 49 U.S.C. § 322] (except subsections (b)(2) and (b)(3) thereof) . . .

After the passage of the Department of Transportation Act, regulation of private motor carriers was no longer under the jurisdiction of the ICC. 49 U.S.C. § 1655(f)(2)(A).

On October 17, 1978, in a laudatory effort to recodify parts of the Interstate Commerce Act, Congress enacted Pub.L. No. 95–473, 92 Stat. 1337 (codified at 49 U.S.C. §§ 10101–11916) (hereinafter referred to as the "Recodification Act"). It is undisputed that through this recodification, Congress intended no substantive change in the Interstate Commerce Act and related laws. See H.R.Rep. No. 95–1395, 95th Cong., 1st Sess. 4, 9–10 (1978), reprinted in [1978] U.S. Code Cong. & Ad.News 3009, 3012–13, 3018. The purpose of the recodification was merely to simplify language, replace obsolete terms, and eliminate superseded and obsolete material.[3]

---

**3.** The legislative history is echoed in the words of the Recodification Act itself. Section 3 of the Act, entitled "Legislative Purpose and Construction," stated that:

Nevertheless, the provision enacted by Congress to replace 49 U.S.C. § 322(g), 49 U.S.C. 11909(b), differs significantly from the former provision in its language:

A person required to make a report to the Commission, answer a question, or make, prepare, or preserve a record under this subtitle *about transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title,* or an officer, agent, or employee of that person, that (1) willfully does not make that report, (2) willfully does not specifically, completely, and truthfully answer that question in 30 days from the date the Commission requires the question to be answered, (3) willfully does not make, prepare, or preserve that record in the form and manner prescribed by the Commission, (4) knowingly and willfully falsifies, destroys, mutilates, or changes that report or record, (5) knowingly and willfully files a false report or record with the Commission, (6) knowingly and willfully makes a false or incomplete entry in that record about a business related fact or transaction, or (7) knowingly and willfully makes, prepares, or pre-

serves a record in violation of a regulation or order of the Commission, shall be fined not more than $5,000.

(emphasis added).

By its terms 49 U.S.C. § 11909(b) does not apply to private motor carriers, since these are not within the jurisdiction of the ICC due to the 1966 Department of Transportation Act.[4] Hence, argues RSR, the penalty provisions of § 11909(b) do not apply to it and the government's information against RSR under § 11909(b) should have been dismissed.

The parties do not dispute that the information would have been proper if RSR had been charged with a violation of 49 U.S.C. § 322(g) and if that statute were still in effect. However, the government concedes that § 322(g) has been repealed by the Recodification Act because it has been replaced by § 11909(b). The Act requires that any reference to a former statute be deemed a reference to its replacement. Thus, under the Department of Transportation Act, 49 U.S.C. § 1655, the DOT has the power to promulgate regulations for private carriers under § 304(a)(3), for that section has not yet been recodified and remains in

(a) Sections 1 and 2 of this Act restate, without substantive change, laws enacted before May 16, 1978, that were replaced by those sections. Those sections may not be construed as making a substantive change in the laws replaced. Laws enacted after May 15, 1978, that are inconsistent with this act are considered as superseding it to the extent of the inconsistency.

(b) A reference to a law replaced by sections 1 and 2 of this Act, including a reference in a regulation, order or other law, is deemed to refer to the corresponding provision enacted by this Act.

(c) An order, rule, or regulation in effect under a law replaced by sections 1 and 2 of this Act continues in effect under the corresponding provision enacted by this Act until repealed, amended, or superseded.

(d) An action taken or an offense committed under a law replaced by sections 1 and 2 of this Act is deemed to have been taken or committed under the corresponding provision enacted by this Act.

(e) An inference of a legislative construction is not to be drawn by reason of the location in the United States Code of a provision enacted by this Act or by reason of the caption or catchline thereof.

(f) If a provision enacted by this Act is held invalid, all invalid provisions that are severable from the invalid provision remain in effect. If a provision of this Act is held invalid in any of its applications, the provision remains valid for all valid applications that are severable from any of the invalid applications.

Pub.L. 95–473, Oct. 17, 1978, 92 Stat. 1466.

**4.** Subchapter II of chapter 105 of the Interstate Commerce Act [now codified at 49 U.S.C. §§ 10521–10529] exempts private carriers from the ICC's jurisdiction. 49 U.S.C. § 10521 states that the ICC has jurisdiction over "transportation by motor carrier." 49 U.S.C. § 10102(14) defines a "motor private carrier" as a person "other than a motor carrier." Before the passage of the Department of Transportation Act, § 304(a)(3) included private carriers in the definition of "motor carriers" under the ICC's jurisdiction for certain limited purposes. The Department of Transportation Act transferred the ICC's powers under § 304(a)(3) to the DOT. 49 U.S.C. § 1655(e)(6)(C). From that point on the ICC no longer had jurisdiction over private carriers.

force. However, the DOT's former authority under the penalty provisions of § 322(g) must now be read as based instead upon § 11909(b), and § 11909(b) only authorizes penalties with respect to transportation subject to the ICC's jurisdiction. It is undisputed that at the time when this replacement statute was enacted, the ICC had no jurisdiction over private motor carriers, nor does it have that jurisdiction presently. Thus, although the DOT retains its power to issue regulations for private motor carriers, RSR argues that a congressional oversight has robbed these regulations of any enforcement through penal sanctions.

The government responds that the original § 322(g) by its terms did not apply to private carriers either, but only did so through reference to § 304(a)(3). Thus the fact that § 304(a)(3) remains in force allows § 11909(b) to apply to private carriers.

This argument is tempting but it does not prove the government's desired conclusion. If we substitute the new statute for the old in § 304(a)(3) as required by the Recodification Act, we obtain the following:

(a) It shall be the duty of the Commission—

. . . .

(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term "motor carrier" shall be construed to include private carriers of property by motor vehicle in the administration of subsection (c) of this section and section[ ] . . . [11909(b)] . . . of this title.

However, the term "motor carrier," which was the operative term expanding the scope of § 322(g) to encompass private motor carriers, does not appear at all in § 11909(b). § 322(g) applies to "[a]ny motor carrier . . . who shall willfully fail or refuse to make a report to the Commission as required by this chapter . . ." Thus, read in conjunction with § 304(a)(3), it is clear that § 322(g) would apply to private carriers to the extent that the ICC (or later, the DOT) issued regulations authorized by § 304(a)(3). On the other hand, § 11909(b) does not refer to "motor carriers" as defined in § 304(a)(3); rather, its scope is limited to "person[s] required to make a report to the Commission . . . about transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title." The ICC, however, has had no jurisdiction over private carriers since 1966. Its powers under § 304(a)(3), which might have given it jurisdiction, have been transferred to the Department of Transportation. Hence § 304(a)(3) cannot help the government get around the clear language of § 11909(b).

To this it may be objected that what Congress clearly meant to say in § 11909(b) was "subject to the jurisdiction of the Commission prior to the Department of Transportation Act." We then would look to § 304(a)(3) to see what the jurisdiction of the ICC was before 1966 and, finding that it included private motor carriers, all would be well. The problem is that although this is what Congress clearly meant to say, intended to say, and wanted to say, still Congress did not say it. It said something which, on its face, appears very different: we are instructed instead to look to the present jurisdiction of the ICC, which does not govern private carriers.

The government poses a second argument, based upon the Department of Transportation Act itself. If we substitute the new statute for the old in §§ 1655(f)(2)(A) and (B) we obtain:

. . . .

(2)(A) With respect to any function which is transferred to the Secretary by subsection (e) and which was vested in the Interstate Commerce Commission preceding such transfer, the Secretary shall have the same administrative powers under the Interstate Commerce Act *as the Commission had before such transfer* with respect to such transferred function. After such transfer, the Commission may exercise its administrative pow-

ers under the Interstate Commerce Act only with respect to those of its functions not transferred by subsection (e).

 (B) For purposes of this paragraph—
  (i) the term "function" includes power and duty, and
  (ii) the term "administrative powers under the Interstate Commerce Act" means any functions under the following provisions of the Interstate Commerce Act, as amended: . . . section[ ] . . . § 11909(b). (emphasis added.)

The government's argument then goes as follows: Section 1655(e)(6)(C) transferred the ICC's functions under § 304(a)(3) to the DOT. These functions are what give enforcement power to the provisions of the former § 322(g) and the present § 11909(b). According to § 1655(f) then, with respect to powers under § 304(a)(3), the Secretary of the DOT now has the same administrative powers under § 11909(b) as the ICC had before the transfer. Before the transfer, the ICC had regulatory powers over private carriers under § 304(a)(3). It thus had jurisdiction over this sort of transportation. Thus the penalty provisions of § 11909(b) would apply to private carriers before the transfer. Hence the powers of enforcement under § 11909(b) over private carriers remain unchanged after the transfer to the DOT, and the DOT may impose regulations on private carriers enforced by penalties under § 11909(b).

The problem with this argument is that it depends upon an inquiry into what the ICC's powers under § 11909(b) were before the 1966 transfer. This is especially puzzling, given that § 11909(b) was not enacted until 1978.

The government may be arguing that the inquiry required by § 1655 should be what the ICC's powers *would have been* if § 11909(b) were in effect in 1966. But this is a strained construction of the statute and is not implied by its language. Neither § 11909(b) nor the Department of Transportation Act indicates why changes in the Interstate Commerce Act *subsequent* to the transfer should affect or relate back to an inquiry into what the ICC's powers were

*prior* to the transfer. In reality, this argument suffers from the same problem as the first one: Congress should have made clear in the language of the statute what it meant, and it has not done so.

We are thus faced with a situation in which the language of § 11909(b) on its face removes private carriers from its penalty provisions. The government argues that, sympathetically construed, the statute need not be so read. But we think it improper to stretch the language of the statute to that extent. We are especially mindful of the fact that we are dealing with a penal statute, and such statutes should be strictly construed.

*Strict Construction*

■ "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself." *United States v. Wiltberger,* 5 Wheat. 76, 5 L.Ed. 37 (1820). Like all maxims of construction, its decisional force varies according to the facts and circumstances of each case and the maxim must be balanced against such countermaxims as construction according to the intent of the legislature and construction according to a reasonable reading of plain language. For example, it is often said that although penal statutes are to be strictly construed, they are not to be construed so strictly as to defeat the obvious intention of the legislature. *Barrett v. U. S.,* 423 U.S. 212, 96 S.Ct. 298, 46 L.Ed.2d 450 (1976); *Huddleston v. U. S.,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974); *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955); *American Fur Co. v. United States,* 2 Pet. 358, 7 L.Ed. 450 (1829); *United States v. Wiltberger, supra; United States v. Scrimgeour,* 636 F.2d 1019 (5th Cir. 1981). It is also said that the principle of strict construction does not mean that the narrowest possible construction must be given without concern for a manifest legislative purpose nor does it mean that common sense and the plain meaning of statutory language are to be disregarded. *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); *United States v. Bass,* 404 U.S. 336,

92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Bramblett, supra; United States v. Brown,* 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948); *United States v. Scrimgeour, supra; United States v. Levy,* 579 F.2d 1332 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1243, 59 L.Ed.2d 471 (1979).

However, the present case is not one where manifest legislative intent is served by giving the words of the statute their plain and ordinary meanings. In both of the arguments the government has put forward, a rather creative interpretation of what is already a highly complex and confusing intermeshing of statutes is necessary to subject private carriers to the penal provisions of § 11909(b). We think this situation corresponds well to the purpose and motivation behind the maxim of strict construction. As the Supreme Court has explained:

> In various ways over the years, we have stated that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–222 [73 S.Ct. 227, 229, 97 L.Ed. 260] (1952). This principle is founded on two policies that have long been part of our tradition. First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States,* 283 U.S. 25, 27, [51 S.Ct. 340, 341, 75 L.Ed. 816] (1931) (Holmes, J.). See also *United States v. Cardiff,* 344 U.S. 174, [73 S.Ct. 189, 97 L.Ed. 200] (1952). Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies "the instinctive distaste against

men languishing in prison unless the lawmaker has clearly said they should." H. Friendly, Mr. Justice Frankfurther and the Reading of Statutes, in Benchmarks 196, 209 (1967). Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. *United States v. Bass, supra,* at 347–48 (footnote omitted).[5] Due to the recodification of the Interstate Commerce Act, Congress has no longer "spoken in language that is clear and definite." Even if the government's arguments about the meaning of § 11909(b) and § 1655(e) and (f) are plausible interpretations of these statutes in the light of Congressional intent, these interpretations cannot be accepted, for the statutes themselves do not give private carriers clear notice of the illegality of their conduct. The plain language of § 11909(b), if anything, indicates that the conduct of private carriers is not subject to penal sanctions. Hence, based upon the considerations explained in *United States v. Bass,* we will apply the rule of strict construction in favor of defendant with respect to § 11909(b) and hold that RSR, a private carrier, cannot be punished under the statute's provisions.

REVERSED.

---

5. *See also United States v. Levy,* 533 F.2d 969, 973 & n. 3 (5th Cir. 1976) (men of common intelligence cannot be required to guess at the meaning of a penal enactment).