UNITED STATES of America,
Plaintiff-Appellee,

v.

John B. LEVY, Defendant-Appellant.

No. 75–1339.

United States Court of Appeals,
Fifth Circuit.

June 21, 1976.

Neil H. Mixon, Jr., Theodore L. Jones, Baton Rouge, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., Donald H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Robert E. Lindsay, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before COLEMAN and GEE, Circuit Judges, and WM. HAROLD COX, District Judge.

COLEMAN, Circuit Judge.

Section 7206(1), Title 26, United States Code, first enacted as a part of the Internal Revenue Code of 1954, reads as follows:

"§ 7206. Fraud and false statements

"Any person who—

"(1) Declaration under penalties of perjury.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony."

In 1971, the date of the offense here alleged, there was no Internal Revenue Service Regulation authorizing or requiring the use of an IRS form known as Form 433–AB. There was a Form 433, more lengthy and detailed, but the regulations required its use in connection with offers of compromise and settlement based upon inability to pay. In this appeal no offer of compromise and settlement was involved.

The appellant, Levy, a lawyer, has been convicted of violating § 7206(1) by signing and delivering an allegedly false Form 433–AB when approached by an internal revenue officer about taxes which Levy admittedly owed but which he claimed he was unable to pay.

The crucial issue in this appeal is whether Form 433–AB is a "statement or other document" within the contemplation of the code section.

After agreeing, at oral argument, that no federal appellate decision has been concerned with a conviction under § 7206(1) for falsely subscribing a Form 433–AB, the government in a supplemental brief suggests that *Genstil v. United States*, 1 Cir., 1964, 326 F.2d 243, involved the use of Form 433–AB. The first count of the *Genstil* indictment did charge a violation of

§ 7206(1) by falsely filing a Form 433–AB, but the second and third counts were predicated on § 7206(5)(B). The opinion of the First Circuit turned chiefly on the sufficiency of the evidence. The applicability of § 7206(1) to Form 433–AB was not mentioned. We conclude that what we have here, *in the context of a criminal prosecution,* is a case of first impression, and we have found it to be a most difficult one. This prompted our request for a supplemental brief from the Department of Justice, which has been filed and to which the appellant has replied.

## I

### *The Nature of the Case*

A grand jury indicted John B. Levy in three counts for making false statements on IRS Form 433–AB, "Statement of Financial Condition and other Information". It was charged that Levy signed the statement as true and correct, verified under the penalties of perjury, when in fact he did not believe it to be true as to every material matter and that it was, in certain respects, false. The respective counts referred to forms signed on December 1, 1969, June 22, 1970, and March 2, 1971. The falsities alleged as to each date were identical except that the 1971 response omitted mention of an overdrawn bank checking account. Despite the identical character of the charges, the jury acquitted on Counts I and II, but convicted on Count III. Levy was sentenced to two years, suspended, and placed on supervised probation for three years.

Fourth and fifth counts of the indictment, charging Mr. Levy with violating 18 U.S.C., § 1001 [1] by making false statements to a special agent and a revenue officer on December 28, 1971 and April 11, 1972 concerning his interest in Invest Corporation, were dismissed by the trial court on the authority of *United States v. Bush,* 5 Cir., 1974, 503 F.2d 813.

## II

### *The Facts*

On March 2, 1971, Levy was in the IRS office at Lafayette, Louisiana, representing a client. *Revenue Officer* Dupuis saw Levy and requested that he meet with him after the conclusion of his client's business. Levy agreed. Officer Dupuis informed Levy that he needed to discuss the *collection* of taxes due from seven accounts that were assessed in Levy's name, including both individual income taxes and employment taxes. Dupuis testified: "I requested payment of these taxes from Mr. Levy and he stated that he could not pay the taxes. And then I told him I needed to get a financial statement from him, which is our Form 433–AB".

The agent then asked the questions appearing on the form, Levy answered the questions orally, and the agent wrote the answers in the appropriate blanks.

Levy read the completed form and signed it, immediately below the following language:

"I (we) declare under the penalties of perjury that the foregoing statement of assets and liabilities, and other information is true and correct to the best of my (our) knowledge and belief."

Before signing, Levy marked through the words "other information", leaving the statement to apply to "assets and liabilities".

We conclude, without extended discussion, that there was ample evidence from which a jury could believe beyond a reasonable doubt that certain of the statements appearing on Form 433–AB were false and that Levy knew they were false, particularly the statements concerning the cash value of insurance policies and commercial stock, held in the name of another, which Levy

---

**1.** § 1001. Statements or entries generally

Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

omitted from his list of assets. There were other statements, concerning the ownership of an undivided interest in wild land and overdrawn bank accounts, which, in our opinion, would not support the conviction.

The case is thus narrowed to the issue of whether the statute authorized the taking of the 1971 Form 433–AB under the penalties of perjury, rendering Levy subject to this prosecution.

The words "statement" and "other document" clearly appear in the fourth line of the code section, and they are there with no limiting exception. Levy made statements in a signed document, which a revenue officer had requested. If we had only to look to the unadorned words, "statement" and/or "document", no difficulty, at least as to the meaning of the statute, would be involved, but the problem is not that simple. In another § 7206(1) case, involving an income tax return, the Supreme Court, quite recently, has said, "We continue to recognize that context is important in the quest for the word's meaning", *United States v. Bishop*, 1973, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941.

### III

### *Legislative History*

The Revenue Act of 1942 did away with the requirement that individual income tax returns be made under oath. Only a verification under the penalties of perjury was required, § 145(c) of the Internal Revenue Code of 1939.

In 1949 Section 145(c) was repealed and a new section [3809], was enacted. It provided:

"§ 3809. Verification of Returns:

"Penalties of Perjury.

"(a) Penalties.—Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter, shall be guilty of a felony, and, upon conviction thereof, shall be fined

not more than $2,000 or imprisoned not more than five years, or both."

\* \* \* \* \* \*

"(c) Verification in lieu of oath.—The Commissioner under regulations prescribed by him with the approval of the Secretary, may require that any return, statement, or other document required to be filed under any provision of the internal revenue laws shall contain or be verified by a written declaration that it is made under the penalties of perjury, and such declaration shall be in lieu of any oath otherwise required."

The Senate Committee explained that the new § 3809 "gives the Commissioner authority to eliminate the oath in the case of \* \* \* other *returns* or *statements*" (emphasis added). Nothing was said about the meaning of "other returns or statements".

The year 1954 saw another revision of the federal tax statutes, embodied in the 1954 Code. It was then that the present statute, § 7206(1), was enacted. Both the House and Senate Committee Reports noted that, except for the penalty, § 7206(1) made no change in former § 3809. Again, the Committee Reports are silent about the meaning of, or what was intended to be included in, "other returns or statements".

■ We are thus compelled to conclude, as did the Supreme Court in *United States v. Bishop, supra*, that the legislative history "contains nothing helpful on the question here at issue, and we must find the answer from the [sections themselves] and [their] context in the revenue laws", 412 U.S. at 356, 93 S.Ct. at 2015, 36 L.Ed.2d at 949.

### IV

### *The Effect of Inconclusive Legislative History*

■ When enacting § 7206(1) Congress undoubtedly knew that the Secretary of the Treasury is empowered to prescribe all needful rules and regulations for the enforcement of the internal revenue laws, so long as they carry into effect the will of Congress as expressed by the statutes.

Such regulations have the force of law.[2] The Secretary, however, does not have the power to make law, *Dixon v. United States, supra.*

The government concedes that there was no regulation authorizing or requiring the use of Form 433–AB in any circumstances, although it insists that Form 433 was quite similar. The regulations, however, prescribe the use of that form in connection with offers of compromise and settlement in cases of inability to pay.

This prosecution, then, has to stand or fall on the language of the statute, with no regulatory implementation.

■ When we come to the statute, we are reminded that it is a perjury statute and perjury is one of the most serious offenses known to the law. See *United States v. Lewis*, 5 Cir., 1973, 475 F.2d 571; *Kolaski v. United States*, 5 Cir., 1966, 362 F.2d 847.

■ The Supreme Court, as most properly it should have, has repeatedly warned that men of common intelligence cannot be required to guess at the meaning of a penal enactment.[3]

In *Lanzetta v. State of New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) the Court, reversing a conviction, said:

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. The applicable rule is . . . 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties * * * and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law'."

■ Criminal statutes must be strictly construed and any ambiguity must be resolved in form of lenity.[4]

■ Moreover, since § 7206(1) is a perjury statute, the party taking the statement must have the authority to take that particular statement, and not some other.[5]

## V

### *The Appellant's Position*

The appellant argues, quite vigorously, that by the enactment of § 7206(1) Congress intended the statute to apply only to *returns* or statements theretofore required to be filed under oath with the Internal Revenue Service. This view is certainly arguable, but the plain words of the statute and the opaque legislative history leave us unconvinced of its correctness.

■ We think the most tenable interpretation of the statute is that Congress intended it to apply to any statement or document then, or thereafter, required either by the Internal Revenue Code or by any regulation lawfully promulgated by the Secretary for the enforcement of the Code.

---

**2.** *Dixon v. United States*, 1965, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223; *Werner v. United States*, 7 Cir., 1959, 264 F.2d 489; *Whirlwind Manufacturing Company v. United States*, 5 Cir., 1965, 344 F.2d 153.

**3.** *Winters v. People of the State of New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Watkins v. United States*, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957); *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Cramp v. Board of Public Instruction of Orange County, Florida*, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *United States v. Sullivan*, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297 (1948), and many others.

**4.** *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910 (1955).

**5.** *United States v. Curtis*, 107 U.S. 671, 672, 2 S.Ct. 507, 508, 27 L.Ed. 534, 535 (1882); *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *United States v. Obermeier*, 2 Cir., 1950, 186 F.2d 243, *cert. denied*, 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685; *United States v. Doshen*, 3 Cir., 1943, 133 F.2d 757.

But the exploration is not over. Appellant urges that, at all events, the form was not required by either Code or regulation, hence could not support the charge for which he was convicted.

## VI

### The Government's Position

The government raises three main points.

First, we quote from its supplemental brief (page 6):

"[W]e submit that the language emphasized above in Section 3809(a) recognized that a written declaration in lieu of an oath also could be *required as a matter of discretion* (emphasis added) * * * Section 7206, which replaced Section 3809, did not change this result."

■ This, we think, puts the cart before the horse. Section 3809(a) gave the Secretary the power of waiving the oath and substituting a declaration under the penalties of perjury, but this, perforce, applied to returns, statements, or documents which the taxpayer could lawfully be required to file. That a taxpayer, at the ad hoc discretion of a governmental officer, agent or employee, without any supporting statute or regulation, may be required to give a statement, of whatever kind, and thereafter be declared a felon in connection with such a statement is at war with the Constitutional due process required of all criminal prosecutions. Whatever else it may have intended, we find ourselves unpersuaded that Congress intended that.

The government brief continues (page 7):

"Moreover, the information the revenue officer here sought to obtain from the taxpayer was in essence testimony in connection with collection of a tax liability. Under Section 7206(3), taxpayers are required to give such testimony. The Form 433–AB which embodied taxpayer's testimony here, therefore, was required by the Code to be submitted."

■ Evidently, the brief writer intended to refer to § 7602. In connection with the collection of any tax liability, 26 U.S.C., § 7602 clearly allows a taxpayer to be summoned and to have his *testimony* taken under oath. Levy was not summoned. In the commonly accepted meaning of the term he gave no testimony. Testimony implies the usual preliminary qualification of taking an oath to speak the truth. From the standpoint of the strict construction required of criminal statutes, we cannot hold that 26 U.S.C., § 7602 requires a person to answer questions and sign a statement under the penalties of perjury rather than testifying under oath.

The final contention of the prosecution is:

"But even if Section 6065 referred only to forms specifically required by the Code or Regulations to be filed, Form 433–AB, as discussed, is such a form. While it ordinarily is used in offers of compromise, nothing in Section 6065 limits the requirement of verification to forms which are being used for the purpose for which they were prescribed, in contrast to use for a purpose to which they are reasonable adaptable."

■ We think the answer to this, as well as an insight to what Congress intended when it enacted § 7206(1), is to be derived from what Congress said in § 6011 of the Code:

"When required by regulations prescribed by the Secretary or his delegate any person made liable for any tax imposed by this title, *or for the collection thereof*, shall make a return or *statement* according to the forms and *regulations* prescribed by the Secretary or his delegate. Every person required to make a return or statement shall include therein the information required by *such* forms or regulations." (Emphasis added).

Form 433 was prescribed by the Secretary and the method of its use was defined by an appropriate regulation. Nothing of the kind has occurred as to Form 433–AB.

### Conclusion

■ Under the law uniformly applicable to perjury prosecutions, of whatever kind, the authority of the Internal Revenue Officer to require Levy to respond to Form

433–AB was an indispensable first step on the road to a felony prosecution, and conviction. In neither § 7206(1) nor in any duly promulgated regulation are we able to discern such authority with the clarity required to establish a criminal offense.

We are of the opinion that Congress intended the criminal sanctions imposed by § 7206(1) to apply to any statement or document required by the Internal Revenue Code or by any regulation lawfully promulgated for the enforcement of the Code.

We do not believe that Congress intended a conviction of felony to be founded upon any and all forms which any revenue agent, officer, or employee, in his own discretion, might choose ad hoc to use in the interrogation of a taxpayer. Due process requires that the taxpayer have notice, by statute or by appropriate regulation duly promulgated thereunder, of the uses to which forms may be put before he may be prosecuted for a felony in connection therewith. We glean from the record that the Internal Revenue Service has *used* Form 433–AB for many years, but without validating its use with an appropriate regulation.

Therefore, we do not believe that the conviction of Levy for a felony in connection with Form 433–AB can stand.

This, in no way, is to be construed as a criticism of the Internal Revenue Service for exerting every effort within the law to collect the taxes owed the government. That undoubtedly is its duty, the purpose for which it is maintained. There were ways by which Levy could have been examined in a manner thoroughly permitted by statute. Those methods remain available to the Internal Revenue Service, to say nothing of regulations which may yet lawfully be promulgated.

In this case, as we view it, the felony conviction of Levy must be, and it is,

REVERSED.