```
              UNITED STATES COURT OF APPEALS
                  For the Fifth Circuit
```

---

```
                     No. 95-30421
```

---

```
              UNITES STATES OF AMERICA,

                                    Plaintiff-Appellee,


                        VERSUS


      KENNETH O. PAYNE; TOMMY RIGMAIDEN; ELIJAH MARTIN, JR.,

                                    Defendants-Appellants.
```

```
*******************************************************************
```

---

```
                     No. 95-30478
```

---

```
              UNITES STATES OF AMERICA,

                                    Plaintiff-Appellee,


                        VERSUS


              TIMOTHY WAYNE RIGMAIDEN,

                                    Defendant-Appellant.
```

```
*******************************************************************
```

**UNITES STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**FREDERICK CAPTAIN,**

**Defendant-Appellant.**

Appeals from the United States District Court
For the Western District of Louisiana

November 11, 1996

Before REYNALDO GARZA, JOLLY and DeMOSS, Circuit Judges:

DeMOSS, Circuit Judge.

We consider three consolidated appeals from five individuals convicted of various counts of conspiracy to distribute, and distribution of, cocaine base ("crack") in the Lake Charles, Louisiana area. Two of the defendants were also convicted of possessing a firearm in relation to a drug-trafficking transaction. The government admits that the firearm convictions cannot stand in light of *Bailey v. United States*, 116 S. Ct. 501 (1995); accordingly, we reverse the firearm convictions and vacate the sentences on those counts. Finding that the evidence is sufficient

to support the other convictions and that the district court committed no reversible error, we affirm the judgments of the district court on all other counts.

## BACKGROUND

**Procedural Background**

Kenneth Payne, Tommy Rigmaiden, Elijah Martin, Jr., Timothy Rigmaiden and Frederick Captain were charged, along with eight other individuals, in a 25 count indictment. All of the charges concerned a crack distribution ring operating in Mossville, Louisiana, a community near Lake Charles.

Frederick Captain plead guilty to one count of distribution of crack, and the remaining charge against him was dismissed. He was sentenced to 78 months imprisonment. Captain filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, which the district court denied. Captain appeals the denial of his motion.

Payne, Martin and Tommy Rigmaiden were tried together and convicted on all counts. Payne and Martin filed motions for acquittal, which were denied. Payne was convicted of one count of conspiracy to possess with intent to distribute crack, four counts of distribution of crack, two count of possession with intent to distribute crack, one count of attempted distribution of crack, and one count of possession of a firearm in relation to a drug-trafficking crime. He was sentenced to 78 months on each of the non-firearm counts, to run concurrently. He was sentenced to 60 months on the firearm count, to run consecutive to the other

3

counts.  Martin was convicted of one count of conspiracy to possess with intent to distribute crack, four counts of distribution of crack, one count of possession with intent to distribute crack, and one count of possession of a firearm in relation to a drug trafficking crime.  He was sentenced to 27 months on each of the non-firearm counts, to run concurrently.  He was sentenced to 60 months on the firearm count, to run consecutive to the other counts.  Tommy Rigmaiden was convicted of one count of conspiracy to possess with intent to distribute crack and three counts of distribution of crack.  He was sentenced to 97 months on each of the counts, to run concurrently.

Due to the illness of his attorney, Timothy Rigmaiden was tried separately.  He was convicted of one count of conspiracy to possess with intent to distribute crack and one count of distribution of crack.  He was sentenced to 30 months on each count, to run concurrently.

**Facts as to Payne, Martin and Tommy Rigmaiden**[1]

This case involves a crack distribution network in Mossville Louisiana.  The leader of the network, and the principal source of cocaine in the Mossville area, was Benjamin Lutcher.  Lutcher would travel to Houston, Texas to purchase crack, which he would then sell in Mossville with the help of his many associates, including Payne, Martin and Tommy Rigmaiden.

---

[1]  Because Payne, Martin and Tommy Rigmaiden were tried separately from Timothy Rigmaiden, to avoid confusion we will discuss the facts from each trial separately.

4

One witness, Deborah Malbrough, testified that the house in which she lived was used for selling crack. In exchange for permission to sell drugs out of the house, the dealers would leave some crack for Malbrough and her boyfriend. Malbrough testified that Payne engaged in drug transactions with Lutcher's associates at her house. Specifically, Payne met with Khoury Thomas, a partner of Lutcher who "always had dope with him." When they met they went into the back room of the house where, Malbrough surmised, they engaged in a drug transaction. She came to this conclusion because "that's all that went on over there." Malbrough also testified that Martin came to the house to buy drugs from Lutcher, often buying over $100 worth of crack.

Albert Holmes, another partner of Lutcher, testified to a meeting between Lutcher and Payne outside a Mossville convenience store. Payne told Lutcher, "I am low." Lutcher then wrote down a telephone number and gave it to Payne.

An undercover police agent bought crack from Payne four times from June to August 1993. The evidence established that Payne and Martin sold crack together outside of Martin's house. On one occasion, Payne asked Martin to go into the house and "get two thirties."[2] Martin then entered the residence and returned with an item, which was later determined to be crack, which he handed to Payne, who gave it to the agent.

---

[2] "Two thirties" is drug trade parlance for two $30 "rocks" of crack.

5

On a separate occasion, Payne and Martin both approached the agent outside Martin's house.  Payne then instructed Martin to go back into the house and get two rocks.  Martin came back within a minute and handed Payne an object, which he handed to the agent.  The object was later determined to be crack.

When Martin was arrested the police found a loaded .45 semi-automatic handgun and two rocks of crack on the nightstand in his bedroom.

Tommy Rigmaiden was a drug user who sold crack to support his habit.  He would often sell crack for other dealers, keeping a small amount for himself as payment.  Malbrough testified that Tommy sometimes sold crack for Lutcher.  She also testified that Payne and Tommy sometimes sold crack together.  Malbrough further testified that Tommy sold drugs for Payne.  Tommy admitted to an FBI agent that he sold crack to support his habit.  Undercover police agents bought crack from Tommy three times in December 1993.

**Facts as to Timothy Rigmaiden**

Zavier Lewis, an undercover "contract agent"[3] for the Calcasieu Parish Sheriff's Office, testified that he bought crack from Timothy Rigmaiden in October 1993.  This crack sale is the basis for the distribution of crack count.

---

[3] A "contract agent" is an individual who, while not a commissioned peace officer, performs undercover police work for a law enforcement agency.  The individual is paid according to the number of drug transactions he conducts.

6

Several witnesses testified that they bought crack from Timothy. Deborah Malbrough testified that Timothy Rigmaiden sold crack with his cousins, Frederick and Damien Captain. No witness testified that Timothy Rigmaiden ever had dealings with Lutcher; several witnesses testified that Timothy Rigmaiden had no involvement with Lutcher.

Malbrough testified that Frederick Captain and Lutcher met at her house on one occasion. When Frederick Captain entered a back room where Lutcher was he had no drugs. "And when he came out of the room, he did have dope."

### DISCUSSION

**Conspiracy -- Payne, Martin and Tommy Rigmaiden**

Payne, Martin and Tommy Rigmaiden argue that there is insufficient evidence to sustain their convictions for conspiracy to distribute crack. In a sufficiency review, we must determine whether viewing the evidence and the inferences therefrom "in a light most favorable to the jury's guilty verdicts, a rational trier of fact would have found these defendants guilty beyond a reasonable doubt." *United States v. Velgar-Vivero*, 8 F.3d 236, 239 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1865 (1994). In denying Payne's and Martin's motions for acquittal, the district court passed on the sufficiency of the evidence. We review the denial of the motion for acquittal *de novo*, applying the same standards as in a general sufficiency review. *United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir.), *cert. denied*, 506 U.S. 918 (1992).

The elements of a drug conspiracy are: "(1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996). "A jury may infer the elements of a conspiracy conviction from circumstantial evidence: an agreement to violate narcotics law may be inferred from concert of action. Knowledge of the conspiracy may be inferred from a collection of circumstances." *United States v. Leal*, 74 F.3d 600, 606 (5th Cir. 1996) (internal quotations and citations omitted).

The defendants claim that the government's witnesses are not credible. They point to the facts that many of the witnesses were crack addicts and most had entered plea agreements with the government, agreeing to testify in return for favorable treatment. However, "non-credibility is generally not a sound basis for alleging insufficiency of the evidence; it is the jury's function to determine credibility." *United States v. Polk*, 56 F.3d 613, 620 (5th Cir. 1995); *see also* **Sanchez**, 961 F.3d at 1179-80. We have held that "a guilty verdict may be supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain of promise of leniency, unless the testimony is incredible or insubstantial on its face." **United States v. Bermea**, 30 F.3d 1539, 1552 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1825 (1995). The testimony in this case is not "incredible or insubstantial on its face."

8

There is sufficient evidence to support the conspiracy convictions of Payne, Martin and Tommy Rigmaiden. The evidence establishes that all three men sold drugs in Mossville and that all three had dealings with Lutcher. Payne met with Khoury, one of Lutcher's partners, and the circumstances of the meeting allow the inference that a drug transaction took place. Payne's comment to Lutcher that "I am low," coupled with Lutcher's response, allow the inference that Lutcher supplied crack to Payne. Martin and Payne sold drugs together out of Martin's house. Martin also bought crack directly from Lutcher. Tommy Rigmaiden sold drugs for Lutcher and Payne. This evidence is sufficient to support the conspiracy convictions.

**Possession with Intent to Distribute -- Payne and Martin**

Payne contends that the evidence is insufficient to convict him of possession with intent to distribute crack. The drugs in this count are the two rocks of crack found on Martin's nightstand when he was arrested. A co-conspirator may be held liable for crimes committed by a co-conspirator in furtherance of the conspiracy. *United States v. Crain*, 33 F.3d 480, 486 n.7 (5th Cir. 1994) (*citing Pinkerton v. United States*, 66 S. Ct. 1180, 1183 (1946)), *cert. denied*, 115 S. Ct. 1142 (1995). The evidence established that Payne and Martin were co-conspirators, and possession with intent to deliver is a crime in furtherance of the conspiracy. Therefore, if Martin is guilty of possession with intent to deliver, then so is Payne.

9

"To prove possession of a controlled substance with intent to distribute, the government must prove beyond a reasonable doubt the defendants possession of the illegal substance, knowledge, and intent to distribute.  The necessary knowledge and intent can be proved by circumstantial evidence." *United States v. Rodriguez*, 993 F.2d 1170, 1175 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1547 (1994).  While the amount of drugs possessed is admittedly small,[4] the jury could infer intent to distribute from the fact that Martin and Payne regularly dealt crack out of Martin's house, the location where the drugs were found.  *Cf*. *United States v. Onick*, 889 F.2d 1425 (5th Cir. 1989) (intent to distribute inferred even though amount of drugs was small due to the presence of drug distribution paraphernalia).  Drawing all inferences in favor of the guilty verdict, a reasonable juror could find that Martin possessed the two rocks of crack with the intent to distribute them.  Therefore, the evidence is sufficient to support Payne's and Martin's convictions.

**Distribution of Crack -- Martin**

Martin maintains that the evidence is insufficient to support his conviction on the four counts of distribution of crack.  These counts stem from the four drug buys which the undercover agent made from Payne.  As discussed above, the evidence is sufficient to find that Martin and Payne were co-conspirators.  Payne's sale of crack

---

[4]  Two rocks of crack is certainly consistent with personal use.  *See, e.g.,* *United States v. Gibbs*, 904 F.2d 52, 58-59 (D.C. Cir. 1990) (15.5 grams of cocaine consistent with personal use).

10

to the undercover agent was in furtherance of the conspiracy.  In addition, Martin was present during at least two of these sales and, at Payne's direction, retrieved the crack from his house.  Thus, the evidence is sufficient to support Martin's conviction on four counts of distribution of crack.

**Possession of Firearm -- Payne and Martin**

Payne and Martin challenge their convictions for possession of a firearm in relation to a drug-trafficking crime, 18 U.S.C. § 924(c).  The government concedes that in light of ***Bailey v. United States***, 116 S. Ct 501 (1995), their convictions cannot stand.  Accordingly, the two § 924(c) convictions are reversed and the consecutive sentences of 60 months each to Payne and Martin are vacated.

**Conspiracy -- Timothy Rigmaiden**

Timothy Rigmaiden claims that there is a variance between the indictment and the evidence at trial.  He contends that the indictment alleges one large conspiracy, while at trial the evidence showed several smaller conspiracies.  He argues that there is no evidence linking him to Lutcher and that conspiracy.  Timothy

11

points out that the alleged conspiracy fits neither within the "wheel"[5] nor "chain"[6] theory of conspiracies.

To prevail on a variance claim a defendant must show (1) a variance between the evidence at trial and the indictment and (2) that his substantial rights were prejudiced. *United States v. Gaytan*, 74 F.3d 545, 552 (5th Cir.), *cert. denied*, 64 U.S.L.W. (1996). Timothy Rigmaiden fails on the first prong of his variance claim because the evidence at trial did not vary from the indictment. The evidence at trial showed only one conspiracy.

Timothy may be correct that the conspiracy in this case does not fit neatly into either the wheel or chain theory. He obtains no relief from that fact, however, because our Circuit has rejected such artificial categories in analyzing conspiracies.[7] As Judge Brown said over 20 years ago, "[c]onspiracies are as complex as the versatility of human nature and federal protection against them is not to be measured by spokes, hubs, wheels, rims, chains or any one or all of today's galaxy of mechanical molecular or atomic forces." *United States v. Perez*, 489 F.2d 51, 59 n.11 (5th Cir. 1973).

---

[5] *Kotteakos v. United States*, 328 U.S. 750 (1946). A wheel conspiracy involves a central "hub" figure, whose associates are the "spokes." The spokes know that they are working for the hub.

[6] *Blumenthal v. United States*, 332 U.S. 539 (1947). In a chain conspiracy, several "links" lead linearly from a source. Each link may not know the entire chain, but the links eventually lead back to the source.

[7] "Finding that they impede rather than facilitate analysis of the 'single conspiracy-multiple conspiracy' issue, we eschew utilization of figurative analogies such as 'wheels,' 'rims' and 'hubs,' which are often used to describe the nature of complex conspiracies." *United States v. Morris*, 46 F.3d 410, 415 n.2 (5th Cir.), *cert. denied*, 115 S. Ct. 2595 (1995).

12

In reviewing a variance claim, we have said that:

> We must affirm the jury's finding that the government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt.

*United States v. DeVarona*, 872 F.2d 114, 118 (5th Cir. 1989). "Among the factors to be considered in determining whether a single conspiracy was proven by the government are (1) the existence of a common goal, (2) the nature of the scheme, and (3) whether the participants overlapped." *Gaytan*, 74 F.3d at 552.

There was a common goal in this case. Timothy Rigmaiden, Frederick Captain ("Captain"), and Lutcher shared the common goal of selling crack in Mossville.

In determining the nature of the scheme, we inquire as to whether "the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture. . . ." *Morris*, 46 F.3d at 416. Here, Lutcher was the leader of the conspiracy, the man who supplied the crack. He sold crack to Captain, who, along with Timothy, sold to users in Mossville. The success of each party was essential to the success of the overall venture. If Lutcher delivered no crack to Captain, then he and Timothy could not sell. Likewise, if Captain and Timothy did not sell crack, Lutcher would not have a distribution system.

Finally, there were overlapping participants in the various dealings. Lutcher sold to Captain who worked with Timothy. There is no evidence that Timothy personally had dealings with Lutcher.

13

Indeed, they may never have met.  Nonetheless, to establish an overlap, "[t]he government does not have to establish that the sellers and purchases knew each other or knew what each was doing." *Morris*, 46 F.3d at 416.

The jury could have found that there was only one conspiracy. Therefore, there is no variance between the indictment and the proof at trial.

**Impeachment of Contract Agent -- Timothy Rigmaiden**

At trial, Timothy Rigmaiden attempted to impeach the contract agent, Zavier Lewis, by inquiring as to whether Lewis had been arrested for distribution of cocaine shortly before becoming a contract agent.  The district court refused to allow this line of questioning, saying that Timothy could not impeach a witness with arrests for which that witness was not convicted.  Timothy made an offer of proof, stating that he was not offering the testimony as evidence of the contract agent's character, but rather, as evidence of his motive to work for law enforcement.[8]  Specifically, Timothy wanted to show  that because of his arrest, Lewis had a motive to cooperate with the police.

---

[8]  Federal  Rule  of Evidence 404(b) provides that while "evidence of other crimes, wrongs or acts is not admissible to prove  the  character  of  a  person . . . it  may, however, be admissible for other purposes such as proof of  motive. . . ."

Timothy contends that the district court's refusal to allow this questioning violated his Sixth Amendment right to confront witnesses. Restrictions on the scope of cross-examination rest within the sound discretion of the trial judge and those restrictions are reviewed for abuse of discretion. **United States v. Campbell**, 49 F.3d 1079, 1085 (5th Cir.), *cert. denied*, 116 S. Ct. 201 (1995). The Sixth Amendment does not guarantee the right to unlimited cross examination. **United States v. Wallace**, 32 F.3d 921, 926 (5th Cir. 1994). In determining whether the district court abused its discretion, "the relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness." **United States v. Tansley**, 986 F.2d 880, 886 (5th Cir. 1993).

Even if the district court abused its discretion by not allowing the cross-examination of Lewis, the error was harmless, and thus does not require reversal. Fed. R. Crim. P. 52(a) ("Any error . . . which does not affect substantial rights shall be disregarded."). Timothy was given the opportunity to, and did, cross-examine Lewis at length regarding Lewis' bias towards him. Timothy adduced evidence that he had often beat up Lewis when they were younger. Lewis admitted that even years later he still was troubled by those beatings.

Lewis was the only witness who testified that Timothy sold the drugs. Timothy's theory is that because of his biases and motivations, Lewis had reason to say it was Timothy who sold the drugs, when in reality it was another. The evidence of the drug

15

conviction did not give Lewis a reason to lie about Timothy, though; it only gave him a reason to cooperate with the police. If Lewis had a reason to lie about Timothy, it was because of the beatings, of which the jury heard ample evidence. Even after considering this evidence of bias, the jury still credited Lewis' testimony and found Timothy guilty. Therefore, Timothy's substantial rights were not affected. ***United States v. Hamilton***, 48 F.3d 149, 155 (5th Cir. 1995) ("[S]o much additional impeachment evidence was admitted in this case that further impeachment of [the witness] with the pending . . . charges could not have affected the trial so as to prejudice [the defendant's] substantial rights."); *see also **United States v. Livingston***, 816 F.2d 184, 191 (5th Cir. 1987).

**Acceptance of Responsibility -- Timothy Rigmaiden**

Timothy argues that the district court erred in not reducing his sentence because he accepted responsibility. U.S.S.G. § 3E1.1. He contends that the district court refused to grant him the reduction because he exercised his right to trial.

The district court found that there was no evidence that Timothy accepted responsibility. "Whether a defendant has accepted responsibility for a crime is a factual question and the standard of review is even more deferential than clear error." ***United***

16

*States v. Spires*, 79 F.3d 464, 467 (5th Cir. 1996).  The district court did not err in its determination that Timothy was not entitled to a § 3E1.1 reduction.[9]

## Habeas Corpus -- Frederick Captain

Frederick Captain appeals the district court's denial of his habeas corpus petition.  28 U.S.C. § 2255.  Captain's § 2255 motion is based on two grounds:  (1) the district court erred in its application of the sentencing guidelines and (2) his trial counsel was ineffective.

Captain argues that the district court improperly applied the sentencing guidelines because he was not given a reduction for acceptance of responsibility and the amount of drugs attributed to him was too large.  The district court correctly held that Captain's claims that the guidelines were improperly applied are not cognizable under § 2255:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.  [Captain] was sentenced within the guideline range and did not appeal the sentence.  A district court's technical application of the Guidelines does not give rise to a constitutional issue.

---

[9] We have held that § 3E1.1 does not violate the Sixth Amendment.  *United States v. White*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, 490 U.S. 1112 (1989).

*United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (internal citations omitted).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's actions fell below an objective standard of reasonableness and (2) the ineffective assistance of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 669 (1984); *Bryant v. Scott*, 28 F.3d 1411, 1414 (5th Cir. 1994). We review counsel's conduct with great deference, "strongly presuming that counsel has exercised reasonable professional judgment." *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987). In the context of a guilty plea, prejudice is present if there is reasonable probability that absent counsel's errors the defendant would not have entered a guilty plea and would have insisted on a trial. *Mangum v. Hargett*, 67 F.3d 80 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 957 (1996). Given the much greater sentence that Captain would have received had he been convicted at trial, it is unlikely that absent any errors by his counsel he would have proceeded to trial.

Captain also argues that his counsel was ineffective because he failed to object at sentencing. A failure to object, however, does not establish a claim of ineffectiveness of counsel. *United States v. Kaufman*, 858 F.2d 994, 1006 (5th Cir. 1988), *cert. denied*, 493 U.S. 895 (1989). Captain also contends that his counsel was ineffective because counsel did not advise him to appeal his sentence. Reviewing the record and the briefs, we agree with the district court that Captain did not carry his burden of

18

showing that his counsel's representation was unreasonable and that he was prejudiced.  The district court did not err in denying Captain's § 2255 motion.


## CONCLUSION

The firearms convictions of Payne and Martin under 18 U.S.C. § 924(c) are **REVERSED** pursuant to *Bailey v. United States*, 116. S. Ct. 501 (1995), and their respective sentences of 60 months are **VACATED**.  The judgments of the district court are **AFFIRMED** in all other respects.