REVISED November 19, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2007

Charles R. Fulbruge III
Clerk

No. 07-50002

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CHARLES THOMAS CLAYTON

Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, Austin

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:

Defendant-appellant Charles Thomas Clayton appeals from a jury verdict finding him guilty of two counts of making and subscribing a false amended tax return in violation of 26 U.S.C. § 7206(1) and six counts of willful failure to file a tax return in violation of 26 U.S.C. § 7203. Clayton appeals his conviction on the six counts of willful failure to file a tax return, arguing that the Internal Revenue Code and tax regulations do not contain a valid exemption amount, and as such there is no legal requirement to file a tax return. He also appeals his conviction on the two counts of making and subscribing a false amended tax return, arguing that: (1) the district court erred in denying requested jury

instructions pertaining to his defense and, (2) there is insufficient evidence to support his conviction. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellant Charles Thomas Clayton is a radiologist who resides and practices in Texas. Clayton regularly filed federal income tax returns until he associated with a tax protest organization in 1992. He did not file a 1992 tax return or pay tax on his 1992 income. In October 1996, he pleaded guilty to willful failure to file a federal income tax return for 1992 and was sentenced to one year probation. He subsequently filed his 1997 and 1998 tax returns.

The events giving rise to the present conviction center on Clayton's tax returns for 1997 through 2004. In 2000, Clayton began associating with Larken Rose, a tax protestor. Together they launched a website and produced a video promoting the "§ 861 argument," which asserted that the domestic income of American citizens is not taxed via the Internal Revenue Code ("IRC"). Around this time, Clayton also began writing letters to the Internal Revenue Service ("IRS") and government officials, demanding that they refute the § 861 argument, and meeting with accountants to ask questions about the federal income tax code. Clayton received numerous replies explaining the fallacy of the § 861 argument, which Clayton patently refused to accept.

Clayton did not file returns for calendar years 1999 through 2004, although he earned over $1.5 million during that period. He also filed amended tax returns for 1997 and 1998, via two "Form 1040X, Amended U.S. Individual Income Tax Return" forms, in which he reported his income as zero and requested a refund of $167,596 in previously-paid tax. Specifically, in April 2001, he filed a Form 1040X for 1997 reporting that his adjusted gross income was not $246,979, as he had original reported, but $0. He claimed a refund of $82,296. In April 2002, he filed a Form 1040X for 1998 reporting that his adjusted gross income was not $243,919, as he had original reported, but $0. He

claimed a refund of $85,300. Clayton attached lengthy memoranda to each amended return based on the § 861 argument.

On April 4, 2006, Clayton was charged with two counts of making and subscribing a false Form 1040X Amended U.S. Individual Income Tax Return for calendar years 1997 and 1998 in violation of 26 U.S.C. § 7206(1). The indictment also charged him with six counts of willful failure to file a tax return for calendar years 1999 through 2004, in violation of 26 U.S.C. § 7203. With respect to the six counts of willful failure to file a tax return, Clayton filed a motion to dismiss the indictment, arguing that the government could not satisfy the first element of the offense, namely that he was required by law to file income tax returns for these years, because the IRC does not establish a valid exemption amount that triggers the duty to pay taxes. The district court denied this motion. Clayton also submitted two jury instructions concerning his theory of defense to the two counts of filing a false tax return. The district court rejected his instructions. The jury found Clayton guilty of all eight counts on August 29, 2006. On September 5, 2006, Clayton filed a Rule 29 motion for a judgment of acquittal on the two counts of filing a false tax return, which the district court denied. Clayton was sentenced to a total of sixty months incarceration. Subsequently, we denied Clayton's motion for release on bail pending appeal, concluding that Clayton had not shown that his appeal raises a substantial question of law or fact.

## II. DISCUSSION

A. Whether Inclusion of the Consumer Price Index Negates the Duty to File a Tax Return

Clayton argues that the district court erred in denying his motion to dismiss the six counts of willful failure to file a federal tax return because the court erroneously determined that the government satisfied the first element of a 26 U.S.C. § 7203 violation—that Clayton was required to file a federal tax

return. See United States v. Buckley, 586 F.2d 498, 503-04 (5th Cir. 1978) (providing that in order to establish a violation of 26 U.S.C. § 7203, the government must prove (1) that the defendant was required to file a return; (2) that the defendant failed to file a return; and (3) that the failure to file a return was willful); see also United States v. Matosky, 421 F.2d 410, 413 (7th Cir. 1970) (same); Sansone v. United States, 380 U.S. 343, 351 (1965).

Clayton contends that no "law" requires the filing of a federal income tax return because, in establishing the exemption amount in 26 U.S.C. § 6012,[1] the government failed to comply with the procedural requirements of the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 551-558. Clayton contends that the statute's reliance on the Consumer Price Index ("CPI") to calculate the exemption amount[2] strips the exemption amount of legal force because the CPI

---

[1] Title 26 U.S.C. § 6012 provides: "Returns with respect to income taxes under subtitle A shall be made by . . . [e]very individual having for the taxable year gross income which equals or exceeds the exemption amount." 26 U.S.C. § 6012(a) (emphasis added).

[2] The term "exemption amount" as used in § 6012 is defined by 26 U.S.C. § 151(d)(1): "Except as otherwise provided in this subsection, the term 'exemption amount' means $2,000." 26 U.S.C. § 151(d)(1). Section 151(d)(4) in turn provides for inflation adjustments to the $2,000 figure listed in § 151(d):

> after 1989, the dollar amount contained in paragraph (1) shall be increased by an amount equal to—
> (i) such dollar amount, multiplied by
> (ii) the cost-of-living adjustment determined under [26 U.S.C.] section 1(f)(3) for the calendar year in which the taxable year begins, by substituting "calendar year 1998" for "calendar year 1992" in subparagraph (B) thereof.

26 U.S.C. § 151(d)(4). Title 26 U.S.C. § 1(f)(3) provides that "the cost-of-living adjustment for any calendar year is the percentage (if any) by which—(A) the CPI for the preceding calendar year, exceeds (B) the CPI for the calendar year 1992." 26 U.S.C. § 1(f)(3). Finally, 26 U.S.C. § 1(f)5 provides that "the term 'Consumer Price Index' means the last Consumer Price Index for all-urban consumers published by the Department of Labor." 26 U.S.C. § 1(f)(5).

is compiled by the Department of Labor ("DOL") and has not been promulgated pursuant to the APA.[3]

We review questions of statutory interpretation de novo. United States v. Adam, 296 F.3d 327, 330 (5th Cir. 2002).

Clayton's argument that an exemption amount based on the CPI cannot trigger tax liability is unpersuasive. Clayton's obligation to file a federal income tax return is derived from 26 U.S.C. § 6012. Section 6012, being a congressionally enacted federal statute, is not the rule of an "agency" as the term agency is defined by the APA. See Franklin v. Massachusetts, 505 U.S. 788, 800 (1992) (explaining that "[t]he APA defines 'agency' as 'each authority of the Government of the United States, whether or not it is within or subject to review by another agency,'" but explicitly does not include the Congress) (citing 5 U.S.C. §§ 701(b)(1), 551 (1)). The fact that § 6012 incorporates by reference the CPI, which is compiled and published by an agency of the DOL, does not cause the APA to be invoked. In this context, the CPI is simply an ascertainable numerical standard, and there is no requirement that such a standard incorporated into a statute be itself an enforceable rule of law. Cf. Ashcroft v. ACLU, 535 U.S. 564,

---

[3] Clayton also argues that to the extent that the exemption amount is listed in the Form 1040 instruction booklet, under the APA, 5 U.S.C. §§ 551-558, this instruction booklet cannot impose a legal duty on individuals because those exemption amounts are not published in the Federal Register. See United States v. Harvey, 659 F.2d 62, 64 (5th Cir. 1981) (holding that the Veterans Administration's loan servicing manual had no force and effect of law because it was not "promulgated in accordance with the procedural requirements of the [APA]"). Clayton asserts that at best, the Form 1040 instruction booklet can be considered as an interpretive regulation not subject to the procedures of the APA, but that an interpretive regulation cannot form the basis for a civil or criminal action against Clayton. See Drake v. Honeywell, Inc., 797 F.2d 603, 607 (8th Cir. 1986) ("An action based on a violation of an interpretive rule does not state a legal claim. Being in nature hortatory, rather than mandatory, interpretive rules can never be violated.").

Clayton's Form 1040 instruction booklet argument is a red herring. Although the IRS indeed publishes the annual exemption amounts in the Form 1040 instruction booklet and other government publications, the government makes no claim that the exemption amount listed in the Form 1040 instruction booklet has the force of law. Instead, the exemption amount is calculated under a formula that is set forth in § 6012 of the IRC.

585 (2002) (holding that the incorporation of "community standards," by itself, did not make the Child Online Protection Act unconstitutionally overbroad).

Furthermore, a statute providing the basis for criminal prosecution may incorporate other provisions by reference. See United States v. Iverson, 162 F.3d 1015, 1021 (9th Cir. 1998). In United States v. Iverson, the Ninth Circuit held that a state statute and municipal code that incorporated by reference federal standards for the term "pollutants" did not fail for unconstitutional vagueness. Id. The court reasoned that "a statute is not unconstitutionally vague merely because it incorporates other provisions by reference; a reasonable person of ordinary intelligence would consult the incorporated provisions." Id.

The Ninth Circuit's rationale is persuasive here. The CPI is an objective standard that has been approved by Congress, via the IRC, to adjust the bare minimum exemption amount of $2,000 for inflation. A reasonable person of ordinary intelligence, if he did not want to avail himself of the IRS documents and notices publishing the applicable exemption amounts, would consult the CPI and make the necessary calculations to determine his gross income for tax purposes. See Pond v. Comm'r, 211 Fed. Appx. 749, 752 (10th Cir. 2007) (unpublished) (explaining that the IRC's provision of a specific number, $2000, and a statutory formula for adjusting that number, adequately defines the exemption amount and permits a taxpayer to be penalized for noncompliance); see also United States v. Priest, Nos. 06-10438, 06-10447, 06-10448, 2007 WL 1961885, at *2 (9th Cir. July 5, 2007) (unpublished mem.) (holding that "the alleged imprecision [caused by incorporating the CPI] in determining a statutorily provided exemption does not void, as a matter of law, the obligation to file a tax return").

B.   Whether the Denial of the Defense's Jury Instructions Was an Abuse of Discretion

Clayton argues that the district court abused its discretion in denying the jury instructions he requested on his theory of defense to the two counts of filing a false income tax return.

We review a properly preserved challenge to jury instructions for an abuse of discretion.  United States v. Finley, 477 F.3d 250, 261 (5th Cir. 2007).  "A district court has broad discretion in framing the instructions to the jury and this [c]ourt will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law."  United States v. McKinney, 53 F.3d 664, 676 (5th Cir. 1995).  "While a defendant is entitled to an instruction on his theory of defense, he has no right to particular wording."  United States v. Simmons, 374 F.3d 313, 319 (5th Cir. 2004).  "When considering an appeal for failure to give defendant's requested defense theory instruction, we review 'whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'"  Id. (quoting McKinney, 53 F.3d at 676) (emphasis added).

A person commits the felony of filing a false tax return in violation of 26 U.S.C. § 7206(1) when he "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter."  § 7206(1).

Clayton requested two jury instructions concerning his theory of defense to the counts of filing a false income tax return for 1997 and 1998. Clayton's theory of defense at trial was that the two Form 1040Xs that he submitted to amend his tax returns for 1997 and 1998 were not false returns, but rather were proper and lawful claims for refunds.  Clayton asserted that he filed Form 1040X

returns to initiate a process whereby, if his claims for a refund were denied, he could present in a later district court proceeding his § 861 argument that income derived from sources within the United States is non-taxable income. Accordingly, he attached to his two Form 1040X returns lengthy memoranda explaining his § 861 argument. Clayton contends that whether the returns were false or were claims for refunds was a central focus of the trial, and, based on the evidence, the jury could have concluded these issues in favor of Clayton.

The jury instructions Clayton requested detail the Form 1040X filing procedure and are as follows:

> REFUND LAWSUITS
> If a taxpayer has filed a return and paid taxes for a prior year, he may seek a refund of taxes paid for that year. This is accomplished by filing a Form 1040X within 3 years thereof. If such a claim is denied, a taxpayer may sue to recover the refund and may assert in such refund lawsuit whatever legal arguments he believes are valid.

> REFUND SUITS
> A taxpayer is barred from raising in a refund suit grounds for recovery not clearly and specifically set forth in his claim for a refund on Form 1040X, including all attachments. All grounds upon which the taxpayer relies must be stated in his claim for refund so as to apprise the IRS of what to look into. Anything not raised in the claim cannot be raised later in a suit for a refund. The refund suit must be filed in either federal District Court or a Claims Court, but cannot in [sic] Tax Court.

Clayton's argument lacks merit because his proposed jury instructions are misleading. Clayton asserts that a Form 1040X cannot give rise to liability for filing a false tax return because it is simply a form used to claim a refund. See 26 C.F.R. 301.6402-3(a)(2). His instructions would serve to bolster that argument. Form 1040X is entitled "Amended U.S. Individual Income Tax

Return" and is verified by a written declaration that it was made under penalties of perjury. Because Form 1040X is used to report all changes or corrections to a filed return, even when the form is used to claim a refund, it is still a return that amends an originally filed return. As such, Form 1040X can give rise to liability for filing a false tax return.

Our decisions, and those of other circuits, support the conclusion that filing a false claim for the refund of taxes gives rise to legal liability for filing a false tax return. See, e.g., United States v. Martin, 790 F.2d 1215 (5th Cir. 1986) (defendant convicted of conspiracy to aid and assist in the preparation of false tax returns and false tax refund claims in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. §§ 371, 287); United States v. Ambort, 405 F.3d 1109 (10th Cir. 2005) (defendant convicted of sixty-nine counts of aiding and assisting in the preparation of false federal tax returns, in violation of 26 U.S.C. § 7206(2), for advising individuals on how to complete Form 1040X and the nonresident alien income tax return form). Moreover, use of a legal procedure to challenge tax liability does not preclude criminal liability. In Ambort, where a defendant advised clients to file Form 1040X to avoid tax liability, he attempted to avoid conviction on charges of aiding and assisting in the preparation of false federal tax returns by arguing that he was simply following established procedures for obtaining a refund. Id. at 1116. The Tenth Circuit rejected his argument, stating that the defendant could not "disguise his knowing disregard of well-established legal principles and duties as a good faith procedural effort to evade those principles and duties." Id.

We have already rejected, in an unpublished opinion, as "patently frivolous" and "absurd" the argument that income derived from sources within the United States is non-taxable income under § 861. Rayner v. Comm'r, 70 F. App'x 739, 740 (5th Cir. 2003) (unpublished). As such, Clayton should not avoid

liability for filing a false tax return simply because he used the procedural device of Form 1040X to challenge his tax liability under the § 861 argument.

Accordingly, because Clayton's proposed instructions would not clearly instruct jurors about the effect of filing a false Form 1040X, the district court did not abuse its discretion in denying them.[4]

C. Whether sufficient evidence was presented to find guilt beyond a reasonable doubt

Clayton argues that the district court erred in denying his post-trial motion for judgment of acquittal on the two counts of filing a false income tax return for 1997 and 1998 because the evidence was insufficient to support his conviction. Clayton first asserts that it is clear from the facts that he was making a "claim for refund" of taxes previously paid and thus could not be charged for filing false returns. He relies on our decision in United States v. Levy, 533 F.2d 975 (5th Cir. 1976), for the proposition that liability cannot arise from a form that is not authorized by a regulation. He contends that the Form 1040X cannot give rise to liability because it is identified as a claim for refund in certain tax code provisions. He further contends that Form 1040X allows him to file an amended tax return based on any legal argument.

Clayton next argues that the evidence that his amended returns were false falls short of proving his guilt beyond a reasonable doubt. He contends that the attachments that he filed with his amended returns advancing his § 861 argument make clear that his purpose in filing the amended returns was to claim a refund, not to file a false return. He further asserts that where the evidence is evenly balanced, entry of a judgment of acquittal is proper.

We review the district court's denial of Clayton's motion for acquittal de

---

[4] Since Clayton's appellate challenge to the jury instructions does not relate to the element of wilfulness under § 7206(1), we find it unnecessary to determine whether his proffered jury instructions, which were intended to explain and support his "theory of defense," would have created confusion as to the willfulness element.

novo. United States v. Anderson, 174 F.3d 515, 522 (5th Cir. 1999) (citing United States v. Payne, 99 F.3d 1273, 1278 (5th Cir. 1996)). In reviewing the sufficiency of the evidence, we view the evidence and the inferences drawn therefrom in the light most favorable to the verdict, and we determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. Id. (citing United States v. Burton, 126 F.3d 666, 669 (5th Cir. 1997); Payne, 99 F.3d at 1278). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." Id. (quoting Burton, 126 F.3d at 669–70). "Moreover, our standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct." Id. (citing Burton, 126 F.3d at 670; United States v. Cardenas, 9 F.3d 1139, 1156 (5th Cir. 1993); United States v. Bell, 678 F.2d 547, 549 n.3 (5th Cir. Unit B 1982)).

A person commits the felony of filing a false tax return in violation of 26 U.S.C. § 7206(1) when he "willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." § 7206(1).

Clayton's initial arguments, which essentially contend that the Form 1040X cannot give rise to legal liability for filing a false tax return, have no merit. We have rejected similar arguments brought under Levy that certain schedules appended to tax returns could not give rise to legal liability for filing a false tax return. United States v. Damon, 676 F.2d 1060, 1063–64 (5th Cir. 1982) (holding that a false Schedule C is an "integral" part of a tax return and is incorporated therein by reference, thus giving rise to liability under § 7206(1)); United States v. Taylor, 574 F.2d 232, 237 (5th Cir. 1978) (same as to Schedules E and F). Also, as we previously discussed, filing a false claim for the refund of

taxes may give rise to legal liability for filing a false tax return, and the mere use of the correct legal procedure will not preclude liability. See Ambort, 405 F.3d at 1116 (stating that the defendant "cannot disguise his knowing disregard of well-established legal principles and duties as a good faith procedural effort to evade those principles and duties").

Furthermore, after reviewing the evidence in the light most favorable to the verdict, we conclude that a jury reasonably could have found Clayton guilty on Counts 1 and 2 in the indictment. The government's theory of the case was that Clayton had been constructing a putative defense centered around his sham § 861 argument as early as June 2000, before ever having filed a false Form 1040X. The evidence presented, and reasonable inferences therefrom, revealed that Clayton knew that his § 861 argument was invalid under the law, and therefore, that his amended returns based on that argument, were false. The government's evidence included Clayton's 1997 and 1998 original returns, stating his income as $246,979 and $243,919, respectively, juxtaposed with Clayton's Form 1040X returns, purporting that his adjusted gross income for 1997 and 1998 was, in fact, zero.

Additionally, the evidence showed that before Clayton filed his first Form 1040X in April 2001, seeking a refund from 1997, he received at least three responses to letters he sent demanding answers to his § 861 argument, which all invalidated the theory. Clayton received a letter from the United States Department of Treasury on December 21, 2000, stating that a U.S. citizen is subject to tax on his or her worldwide income, and that the source rules of §§ 861–865 of the IRC do not limit or exclude items from consideration for purposes of determining a U.S. citizen's taxable income. Clayton also received correspondence from David Cay Johnston, a New York Times reporter, who told him the § 861 argument was a fantasy, pure and simple. When, Clayton challenged this conclusion based on the fact that Johnston was not a lawyer,

12

Clayton received yet another response from Johnston stating that he asked lawyers, including tax lawyers, and everyone agreed that taxes are owed. Also, testimony from Clayton's CPA David Smith revealed that he advised Clayton that the theory was invalid. However, Clayton dismissed these replies and advice and submitted Form 1040X based on his § 861 argument anyway.

The evidence also showed that before sending his second Form 1040X in April of 2002 to request a refund for the original 1998 tax return, Clayton received at least three more responses to his letters, similarly putting him on notice that his § 861 argument was flawed. In May of 2001, he received two emails from Tax Help stating that the obligation to pay taxes is not optional, the average citizen knows taxes are required, and income includes all income worldwide. In July 2001, the IRS sent him another letter with an attached Notice 2001-40 stating that those who continue to follow the § 861 argument in refusing to file returns may well be subject to criminal penalties. Again, Clayton testified that he disregarded these letters as not addressing the issue he presented.

Additionally, by Clayton's own written words, it was reasonable for a jury to conclude, beyond a reasonable doubt, that he willfully filed what he subjectively knew were false amended returns. The evidence revealed that in June 2000, around the time Clayton initiated his research regarding the § 861 argument, he sent an email to a fellow tax protester, Larken Rose, stating that "by God (or whatever) I am going to screw [the IRS] for screwing me." In the same month, Clayton sent Rose another email discussing how to deceive the online public into thinking more than just a few people were advocating the § 861 argument. He ended that email with the line: "Sometimes (most of the time) I am so full of shit it amazes me." In yet another email exchange with Rose, Clayton seemed to be constructing a defense to future litigation when he discussed documenting the "solid stuff" about the § 861 argument, and then

13

stated, "if they were ever stupid enough to bring it to court, that knowing what I do about what can be dealt with in criminal court (which is ANYTHING convinced me of my position) that all this stuff would be brought out formally and kill them dead." Then, in March of 2001, Clayton mentioned taking "proactive steps" to protect himself from indictment in another email to Rose.

On this evidence, a rational jury could have found beyond a reasonable doubt that Clayton knew his Form 1040X returns were false under the tax laws and wilfully filed them in violation of 26 U.S.C. § 7206(1) to obtain refunds for 1997 and 1998.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.